**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**CHAZ PINKSTON**                                                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 5:22-cv-18-KS-MTP**

**LARRY LEE, ET AL.**                                                            **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Motion for Summary Judgment [24] filed by Defendants Jody Bradley, Karen Brown, George Castro, Terry Daniel, Justin Green, Robert Marquardt, Delando Miles, Gabriel Walker, Robyn Williams, and MTC (collectively "the MTC Defendants") and the Motion for Summary Judgment [26] filed by Defendant Larry Lee. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Motions for Summary Judgment [24] [26] be granted and this action be dismissed with prejudice.

## BACKGROUND

On August 13, 2020, Plaintiff, a post-conviction inmate proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983 in Civil Action No. 5:20-cv-167-KS-MTP. On March 11, 2022, the Court conducted an omnibus hearing, and on March 22, 2022, the Court severed Plaintiff's claims into five separate civil actions, including this action—Civil Action No. 5:22-cv-18-KS-MTP. *See* Omnibus Order [1].

Plaintiff's claims in this action arise from his incarceration at Wilkinson County Correctional Facility ("WCCF").[1]  In his complaint and as clarified by his testimony at the

---

[1] Plaintiff is currently incarcerated at East Mississippi Correctional Facility.

1

*Spears*[2] hearing, Plaintiff alleges that a nurse practitioner informed him that he needed to wear shoes instead of sandals, and he requested shoes from Larry Lee (the Mississippi Department of Corrections contract monitor) and George Castro (the warden of programs).  Lee and Castro refused to provide him shoes.  Allegedly, Plaintiff also requested thermal wear and a jacket during the winter, but Lee and Castro refused that request.

Additionally, Plaintiff alleges that he was served an inadequate amount of food and that much of the food was spoiled, freezer burned, cold, or moldy.  Plaintiff also alleges that he had to drink brown water from his sink.  Plaintiff allegedly reported the issues with the food to Defendants Walker, Bradley, Toomey, Daniel, Green, Brown, Miles, and Williams.  Plaintiff also alleges that he wrote letters to Defendant Marquardt (the president of MTC) concerning the food, but he did not speak to Marquardt.  Finally, Plaintiff alleges that as the employer of these Defendants, MTC should be held liable for its employees' actions.  As relief, Plaintiff seeks monetary damages from all Defendants.

On July 7, 2022, the MTC Defendants filed their Motion for Summary Judgment [24], and on July 15, 2022, Defendant Lee filed his Motion for Summary Judgment [26].  The Defendants argue that Plaintiff failed to properly exhaust his available administrative remedies concerning his claims against several of the Defendants and that Plaintiff cannot establish that any of the Defendants committed a constitutional violation.  On September 14, 2022, Plaintiff filed his Responses [34] [35] [36] to the MTC Defendants' Motion for Summary Judgment [24].  On November 1, 2022, Plaintiff filed his Responses [47] [48] [49] to Defendant Lee's Motion for Summary Judgment [26].

---

[2] *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Flores v. Livingston*, 405 Fed. Appx. 931, 932 (5th Cir. 2010); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the complaint).

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.*  "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)).  "An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).  When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138.  However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## ANALYSIS

### *Clothing and Shoes*

As previously discussed, Plaintiff alleges that Defendants Lee and Castro refused his requests for thermal wear and a jacket during the winter and refused his request for shoes in place of sandals after a nurse practitioner informed Plaintiff he needed to wear shoes. The undersigned will first address Plaintiff's allegations concerning his request for thermal wear and a jacket. The Eighth Amendment protects inmates from cruel and unusual punishment and "requires prison officials to provide 'humane conditions of confinement,' ensuring that 'inmates receive adequate food, clothing, shelter, and medical care . . . ." *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 932 (1994)). In order to demonstrate that a prison official violated the Eighth Amendment, Plaintiff must establish that the official was deliberately indifferent to a substantial risk of serious harm. *Id*. Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837.

Not all unpleasant conditions of confinement amount to cruel and unusual punishment. "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he Constitution does not mandate comfortable prisons, and prisons . . . cannot be free of discomfort." *Id*. at 349. Only those conditions which are "inhumane and barbaric" and

deny an inmate of "the minimal measure of life's necessities" violate the Eighth Amendment." *Palmer*, 193 F.3d at 352.

Depriving inmates of protection from excessive cold can violate the Eighth Amendment. *Id*. at 354.  In *Palmer*, the United States Circuit Court for the Fifth Circuit found that a prisoner's "outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew" constituted a denial of the minimal civilized measure of life's necessities. *Id*. at 353.  In this case, however, Plaintiff has not alleged, much less demonstrated, that Defendants deprived him of protection from the cold.  Plaintiff does not allege that he was confined outside in the elements, nor does he dispute that he was provided clothes and a blanket. At most, Plaintiff has demonstrated that he was uncomfortable, but "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 347.  Plaintiff has failed to demonstrate that Defendants deprived him the minimal civilized measure of life's necessities. *See Ford v. Jones*, 149 Fed. Appx. 316, 317 (5th Cir. 2005).

Additionally, Plaintiff has failed to demonstrate that he suffered a physical injury which, under the Prison Litigation Reform Act ("PLRA"), bars his claim for compensatory damages. Pursuant to the PLRA, a prisoner may not bring a federal civil action requesting compensatory damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Thus, if a prisoner fails to show a physical injury, he may not recover compensatory damages.  The physical injury required must be more than *de minimis* but need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

According to Plaintiff, he experienced joint and back pain and headaches due to the cold. *See* [49] at 7; [36] at 8.  However, "[a] physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching

back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks." *Luong v. Hatt*, 979 F. Supp. 481, 48 (N.D. Tex. 1997). "Injuries for which free world individuals would not seek emergency room or other professional medical care are not significant." *Purtell v. Corr. Corp. of Am.*, 2007 WL 1464376, at *2 (N.D. Miss. Mar. 26, 2007). Injuries which "normal people treat with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *Whitney v. Taylor*, 2007 WL 2254348, at *4 (N.D. Miss. July 13, 2007). Accordingly, Plaintiff's claims based on the deprivation of thermal wear and a jacket should be dismissed.

Turning to Plaintiff's allegation concerning shoes, the undersigned notes that according to Plaintiff, he developed warts and callouses on his feet as a result of wearing sandals instead of shoes. Plaintiff alleges he experienced pain in his feet, ankles, and hips as a result of walking in sandals. *See* [36] at 8; [48] at 2; [49] at 7. He also alleges that a nurse practitioner determined that he needed shoes. He claims that Defendants refused to provide him shoes despite the alleged medical need. From his allegations, it appears that Plaintiff is asserting claims based on the failure to provide adequate medical care.

The Eighth Amendment requires prison officials to ensure that inmates receive adequate food, clothing, shelter, and *medical care*. "Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing

deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Plaintiff's medical records demonstrate that on March 25, 2020, a nurse examined Plaintiff after he complained of foot pain. *See* [49-7] at 6. During the exam, Plaintiff requested new shoes and insoles, but the medical provider noted that "no treatment or intervention is needed at this time." *Id*. at 5. On May 26, 2020, Dr. James Burke examined Plaintiff for his

complaints of pain in his feet, ankles, and hips. *Id*. at 2.  Plaintiff blamed the pain on "being on concrete all the time" and requested a chair for his cell. *Id*.  Dr. Burke noted Plaintiff's flat feet and plantar warts. *Id*.  On June 4, 2020, a medical provider shaved Plaintiff's plantar wart. *Id*. at 3.

On June 16, 2020, Plaintiff informed a nurse that his doctor said Plaintiff's pain was due to warts on his feet and treated them with medications. *Id*. at 7.  On July 21, 2020, Dr. Burke shaved Plaintiff's warts and treated them with trichloroacetic acid. *See* [49-6] at 9.  Dr. Burke did not mention any need for shoes.  Plaintiff filed this action on August 13, 2020.

On September 28, 2020, Plaintiff was taken to the University of Mississippi Medical Center where his warts were treated with liquid nitrogen. *Id*. at 3.  On October 27, 2020, a nurse noted that she would consult with a doctor about ordering Plaintiff his requested items, such as shoes, a scrub brush, and Old Spice deodorant. *See* [49-7] at 8.  The nurse entered a service form for shoes and insoles. *Id*. at 4.  However, there is no indication that a doctor prescribed or ordered shoes or insoles for Plaintiff.  Furthermore, the record does not contain a finding from a doctor or other medical provider that shoes were medically necessary.  At most, the record shows that a nurse acquiesced to Plaintiff's request for new shoes.

In order to succeed on his claims, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. Appx. at 964. Plaintiff has failed to make this showing.  The record demonstrates that medical providers monitored and treated the issues with Plaintiff's feet, including his warts.  The record does not establish that shoes were a serious medical need or that Defendants were deliberately indifferent to any serious medical needs. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medication may

rebut an inmates' allegations of deliberate indifference."). Plaintiff may believe shoes were a necessary, but "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292. Because Plaintiff has not established that Defendants Lee and Castro were deliberately indifferent to any serious medical need, Plaintiff's claims against these Defendants are without merit.[3]

### Food and Water

Plaintiff alleges that, while at WCCF, he was served an inadequate amount of food and that much of the food was spoiled, freezer burned, cold, or moldy. Plaintiff also alleges that he had to drink brown water from his sink. Plaintiff asserts his claims concerning the food and water at WCCF against Defendants Walker, Bradley, Toomey, Daniel, Green, Brown, Miles, Williams, Marquardt and MTC.

In their Motion for Summary Judgment [24], Defendants argue that Plaintiff failed to exhaust his available administrative remedies concerning his claims against Defendants Brown, Daniel, Green, Miles, and Marquardt. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983. "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The United States Court of Appeals for the Fifth Circuit held that "[s]ince exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the

---

[3] Although Defendants raised the defense of sovereign immunity and qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Well v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Because Plaintiff has failed to establish cognizable constitutional claims, the Court need not address the issue of whether Defendants are entitled to immunity.

right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272.  Because exhaustion is an affirmative defense, Defendants bear the burden of demonstrating that Plaintiff failed to exhaust available administrative remedies. *Id*. at 266.

The Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement. *Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)).  A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary."  *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006).  It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

Mississippi Code § 47-5-801 grants the Mississippi Department of Corrections ("MDOC") the authority to adopt an administrative review procedure at each of its correctional facilities.  Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint relating to any aspect of his incarceration. *See* MISSISSIPPI DEPARTMENT OF CORRECTIONS HANDBOOK[4] at Ch. VIII.

The ARP is a two-step process.  An inmate is required to submit his initial grievance or request, in writing, through the Inmate Legal Assistance Program ("ILAP") within thirty days of an alleged incident.  If, after screening, the grievance or request is accepted into the ARP, an

---

[4] *See* http://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx. (Last visited January 17, 2023).

official will issue a First Step Response.  If the inmate is unsatisfied with the First Step

Response, he may continue to the Second Step by using ARP form ARP-2. *See* MISSISSIPPI

DEPARTMENT OF CORRECTIONS HANDBOOK at Ch. VIII.

Plaintiff submitted a grievance on August 28, 2018, complaining that Defendants

Bradley, Walker, and Williams (as well as other individuals not named as defendants in this

action) were aware that Plaintiff was not receiving 3,000 calories each day and that some of the

food served at the prison was "spoiled, rotten, or just old . . . ." *See* [43-1].  Plaintiff, however,

did not mention Defendants Daniel, Green, Brown, Miles, or Marquardt.

The law does not necessary require that a prison official defendant be specifically named

in a grievance. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).  Instead, the "level of detail

necessary in a grievance to comply with the grievance procedures will vary from system to

system and claim to claim, but it is the prison's requirements, and not the PLRA that define the

boundaries of proper exhaustion." *Id*.  The Court must, therefore, look to the requirements of the

grievance system at WCCF to determine if Plaintiff exhausted his claims against Defendants

Daniel, Green, Brown, Miles, and Marquardt.

The MDOC ARP instructs inmates to "present as many facts as possible to answer all the

questions who, what, when, where, and how concerning the incident." *See* MISSISSIPPI

DEPARTMENT OF CORRECTIONS HANDBOOK at Ch. VIII.  This Court has previously held that "this

portion of the ARP requires that all officials involved be named or at least referenced in

description." *Holton v. Hogan*, 2018 WL 707544, at *3 (S.D. Miss. Jan. 10, 2018).  Plaintiff's

allegations involve multiple instances over a long period of time and include names and

references to several officials, but he did not mention Defendants Daniel, Green, Brown, Miles,

or Marquardt.  Considering Plaintiff's allegations, it was necessary to mention these individuals

in order to provide fair notice of his complaints against them and to give the prison an opportunity to address Plaintiff's complaints against them. *See Ferguson v. Ellis*, 2019 WL 1560479, at \*4 (S.D. Miss. Feb. 4, 2019).

In his Responses, Plaintiff asserts that the subject grievance was one of many he filed "against these Defendants regarding these claims." *See* [35] at 12. Plaintiff did not produce these other grievances or demonstrate that he fully exhausted any of the alleged grievances. Instead, he simply states: "I have fully exhausted all of my administrative remedies available concerning all of the defendants aforementioned in this case." *See* [36] at 1. However, Plaintiff's conclusory assertion of exhaustion is insufficient to overcome summary judgment. *See Huff v. Neal*, 555 Fed. Appx. 289, 294 (5th Cir. 2014) (conclusory allegations of exhaustion, supported only by the plaintiff's conclusory affidavit, are insufficient to raise a genuine issue of material fact) (citing *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)); *see also Antunez v. Mendez*, 2007 WL 9734691, at \*8 (N.D. Tex. July 23, 2007) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.").

Additionally, Plaintiff asserts that he was not provided a MDOC Handbook. *See* Response [35]. According to Plaintiff, he relied on MDOC Policy No. 20-08-01, which provides the following definition of grievance: "A written complaint by an offender on the offender's own behalf regarding a policy applicable within an institution, a condition with an institution, an action involving an offender of an institution, or an incident occurring within an institution." *See* [35-2] at 2. "[C]ourts may *not* deem grievance procedures unavailable merely because an inmate was ignorant of them, so long as the inmate had a fair, reasonable opportunity to apprise himself of the procedures." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015). The record

demonstrates that Plaintiff had such an opportunity and did in fact apprise himself of the ARP

procedures. According to Plaintiff, he filed over one hundred grievances. The record

demonstrates that Plaintiff was aware of the ARP's requirement that he name or at least

reference all officials involved. For example, in the subject grievance, Plaintiff named multiple

officials and referenced others by description, such as the kitchen supervisor. *See* [43-1] at 1.

Because the grievance process was available to Plaintiff and he failed to complete the process,

his claims against Defendants Daniel, Green, Brown, Miles, and Marquardt should be dismissed.

Moreover, even if Plaintiff exhausted his administrative remedies as to these Defendants,

he has failed to establish that any of the Defendants violated his constitutional rights by

depriving him of adequate food and water. Plaintiff alleges that the water at WCCF was

discolored, had a bad odor and taste, and made him sick. Prisoners are entitled to the minimal

measure of life's necessities which obviously includes safe drinking water. *See Helling v.*

*McKinney*, 509 U.S. 25, 33 (1993); *see also Womble v. Harvanek*, 739 Fed. Appx. 470, 473

(10th Cir. 2017) ("access to a sufficient supply of uncontaminated drinking water is a basic

human need"). To succeed on a claim based on the deprivation of safe drinking water, "a

plaintiff must show that the water is, in fact, sufficiently contaminated that that the prison

officials were deliberately indifferent to this fact." *Amos v. Cain*, 2021 WL 1080518, at *18

(N.D. Miss. Mar. 19, 2021). "Water is sufficiently contaminated when it is 'demonstrably

unsafe.'" *Id*. (quoting *Helling*, 509 U.S. at 33). Plaintiff's "personal belief that the water was

contaminated, without more, is not sufficient to support a claim." *Walker v. Collier*, 2019 WL

1421152, at *8 (E.D. Tex. Mar. 28, 2019).

Here, Plaintiff has failed to demonstrate that the water at WCCF was demonstrably

unsafe. Plaintiff asserts that the water was brown and has a bad smell and taste, but "[b]rown,

bad-tasting water, by itself, fails . . . to establish that the water is unsafe." *Lee v. Davis*, 2021 WL 4185881, at *3 (E.D. Tex. Aug. 9, 2021). Plaintiff also claims the water made him sick, but "mere personal belief" that the water caused his medical ailment is insufficient to support a claim. *Id*. at *4; *Amos*, 2021 WL 1080518, at *18 (holding that prisoner's assertions that the "brown and contaminated" water made him "ill," without objective evidence, was insufficient to support a claim). Plaintiff admitted that he had no medical information showing that any sickness he suffered was caused by the water at WCCF. *See* [24-1] at 33. "Because plaintiff has not pointed to any evidence that the water was actually unsafe (as opposed to being merely unpalatable), this claim fails." *James v. Edwards*, 2021 WL 1856908, at *7 (E.D. La. May 10, 2021).

Concerning food, Plaintiff alleges that he received an inadequate amount and that much of it was spoiled, freezer burned, cold, or moldy. The Constitution requires that inmates be provided "well-balanced meals, containing sufficient nutritional value to preserve health." *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986); *see also Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities." *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (internal quotations and citation omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id*.

The record does not demonstrate that the quantity or quality of food fell below the threshold of the minimal civilized measure of life's necessities. Plaintiff has not shown that his health was put at risk. *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999). Plaintiff's medical records demonstrate that on January 4, 2018—shortly before Plaintiff was transferred to

WCCF—he weighed 190 pounds. *See* [24-3] at 1.  On May 22, 2018, about four months after his arrival at WCCF, Plaintiff remained 190 pounds, with a body mass index ("BMI") of 28.16. *Id*. at 2.  Defendants note that a BMI of 28.16 is considered overweight. *See* [25] at 3; [24-6] at 4.

On July 3, 2018, Plaintiff weighed 182 pounds. *See* [24-3] at 3.  By December 28, 2018, his weight had dropped to 174.6 pounds. *Id*. at 5.  At that time, however, the medical provider noted that Plaintiff was on an alleged hunger strike and was malingering. *Id*.  By January 17, 2019, his weight had increased to 178.4 pounds. *Id*. at 6.  At that time, he requested a "low salt cardiac diet" to help his blood pressure. *Id*.  On July 29, 2019, Plaintiff weighed 169 pounds, and the medical provider again noted Plaintiff's alleged hunger strike and malingering. *Id*. at 8.  Plaintiff's weight increased to 174 pounds by August 13, 2019. *Id*. at 9.  On November 17, 2019, however, Plaintiff was examined after he complained of "not having an appetite," and his weight had dropped to 156.8 pounds. *Id*. at 10.  Plaintiff was not vomiting or nauseous; he stated that "he simply doesn't have an appetite and therefore is not eating." *Id*.

Plaintiff's weight increased to 165.2 pounds by April 30, 2020, and was up to 167.2 pounds by June 16, 2020. *Id*. at 11-13.  On July 2, 2020, Plaintiff reported that he was initiating "another hunger strike" to protest the "cafeteria not giving a decent amount of food to offenders." *Id*. at 15-16.  The medical provider noted that one of Plaintiff's current problems was "hunger strike with malingering." *Id*. at 16.  On July 7, 2020, Plaintiff's weight was 156.4 pounds. *Id*. at 18.  Plaintiff filed this action on August 13, 2020.

On October 29, 2020, Dr. Steve Bonner, a psychiatrist, examined Plaintiff and noted that Plaintiff's "[antisocial personality disorder] issues were quite evident today in his behavior of playing the victim role and ma[de] many accusations of wrongdoing by others toward him, as well as twisting everyone else's words to suit his own case." *Id*. at 22.  On January 16, 2021,

Plaintiff was transferred to East Mississippi Correctional Facility, and his weight was up to 179 pounds. *Id*. at 23.

Plaintiff's medical records demonstrate that, when he was not on a hunger strike or reporting that he had no appetite, his weight increased throughout his incarceration at WCCF.[5] There is no indication in the record that medical professionals thought Plaintiff was provided insufficient nutrition. In fact, multiple medical professionals noted that Plaintiff was *malingering*. His physiatrist said that Plaintiff was "playing the victim role." *Id*. at 22.

Laura Donnelly, the regional dietician for Trinity Services Group, Inc, the company responsible for food services at WCCF, provided an affidavit stating that "the meals prepared for Plaintiff during his confinement at WCCF were complete, nutritionally adequate and complied with the approved menu in all respects . . . ." *See* [24-6] at 3. That said, the record does not establish that the food served at WCCF was exquisite. Plaintiff stated that different foods were cold, old, freezer burned, spoiled, or molded. Plaintiff also submitted an incident report from September 7, 2018, in which a staff member reported mold on the food. *See* [36-2] at 2. However, the fact that food is served cold or occasionally contains things such as insects or mold, "while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985); *see also Bass v. Tubbs*, 2013 WL 5178644, at *2 (W.D. La. Sept. 12, 2013) (finding that inmate who was able to eat the food that was not contaminated by insects and mold did not face a substantial risk of harm).

---

[5] After a hunger strike was noted on December 28, 2018, Plaintiff's weight increased from 174.6 pounds to 178.4 pounds by January 17, 2019. After a hunger strike was noted on July 29, 2019, his weight increased from 169 pounds to 174 pounds by August 13, 2019. After he reported "no appetite" on November 17, 2019, his weight increased from 156.8 pounds to 167.2 pounds by June 16, 2020. Finally, after a hunger strike was noted on July 7, 2020, his weight increased from 156.4 pounds to 179 pounds by January 16, 2021.

Plaintiff may not have always been pleased with the food served at WCCF, but "[t]he Constitution does not require that convicted inmates be provided with particular consumables at a certain temperature or levels of tastiness or with every culinary amenity which one may find desirable." *Jackson v. Gusman*, 2015 WL 5823295, at *8 (E.D. La. Oct. 6, 2015). "[T]he constitutionality of prison food is not judged by its gastronomic appeal." *Billizone v. Jefferson Parish Corr. Center*, 2015 WL 966149, at *5 (E.D. La. Mar. 4, 2015). "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). The record establishes that Defendants did not deprive Plaintiff of the minimal measure of life's necessities, and Plaintiff has failed to show that any Defendant was deliberately indifferent to a substantial risk of serious harm to Plaintiff.

## RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that:

1. The Motion for Summary Judgment [24] be GRANTED;

2. The Motion for Summary Judgment [26] be GRANTED;

3. Plaintiff's claims be DISMISSED with prejudice; and

4. A separate judgment in accordance with Federal Rule of Civil Procedure 58 be entered.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject, or modify in whole or in part the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed

findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

      This the 20th day of January, 2023.

s/ Michael T. Parker_____
United States Magistrate Judge
